**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOY AND MIDDLEBELT SUNOCO, INC.
and MAROUN FAWAZ,

    Plaintiffs,

                                      Case No. 04-CV-74870-DT

v.

                                      HONORABLE DENISE PAGE HOOD

FUSION OIL, INC. and SUNOCO, INC.,

    Defendants.
_____/

**MEMORANDUM OPINION AND ORDER**
**AND**
**NOTICE OF STATUS CONFERENCE**

**I.    BACKGROUND/FACTS**

Plaintiffs Joy and Middlebelt Sunoco, Inc. and Maroun Fawaz entered into a Dealer Franchise Agreement ("2001 DFA") with Defendant Sunoco, Inc. ("Sunoco") effective February 4, 2001 to February 4, 2004. Plaintiffs allege that Defendant Sunoco's assignment of the 2001 DFA to Defendant Fusion Oil, Inc. ("Fusion") in 2004 was a termination or nonrenewal of the 2001 DFA between Defendant Sunoco and Plaintiffs, within the meaning of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq*.

In the early part of 2003, Defendant Sunoco commenced its "Spring Project," which substantially changed the way it distributed its motor fuel in its MidAmerica Division, which includes Michigan. Prior to this change, retail outlets such as Plaintiff Joy and Middlebelt Sunoco had two lines of fuel distribution: a direct distribution from Sunoco, and an indirect distribution supply from distributors who purchased fuel from Sunoco, and in turn sold it to the dealer. By the end of Spring 2003, Sunoco had ceased all direct fuel distribution activity throughout its

MidAmerica Division and left fuel distribution solely in the hands of the distributors.

According to Sunoco, the Spring Project had three phases; only the first two of which are relevant to this action. In the first phase, Sunoco-owned stations were offered for sale to the dealers who rented the sites from Sunoco, pursuant to the PMPA. Dealers who accepted the offer were then given a list of eligible fuel distributors from whom they could choose to receive their fuel supply. If a dealer declined to purchase, the property went to a sealed bid auction process. As it turned out, many of the winning bidders were suppliers who then became the respective site's supplier.

Sunoco owned the Joy and Middlebelt site and when Plaintiff Fawaz declined his opportunity to purchase the site, Imperial Property Management, LLC submitted the winning bid in Phase Two of Sunoco's Spring Project.[1] The terms of the 2001 DFA between Defendant Sunoco and Plaintiffs allowed Defendant Sunoco the right to assign the Franchise:

> Company ("Sunoco") may assign this Franchise to any distributor, refiner, or other "franchisor" that word is used in the [PMPA], subject to the following:
>
> (1) Assignee shall agree in writing to perform and to comply with all of Company's obligations hereunder, except with respect to provisions of Section 2. Prices, herein.
>
> (2) Company shall notify Dealer in writing of name and address of assignee, and effective date of assignment.
>
> (3) Such assignment, when made in the manner herein-provided, shall not be treated as either a termination or nonrenewal of this Franchise, or of any of Dealer's rights as "franchisee" under the Act, but this Franchise and Dealers rights shall continue in full force and effect. Assignee shall succeed to all the rights, obligations and privileges provided in favor of Company under this Franchise and the Act.

(Def Br. Ex. A., DFA §2.21(l)).

---

[1] According to Defendant Sunoco, Imperial Property Management, LLC and Fusion Oil are controlled by the same principal, Hassan Harajli

On November 17, 2003, Defendant Sunoco and Defendant Fusion Oil reached an Assignment and Assumption Agreement ("2003 Assignment Agreement") containing the following provisions:

1. Assignor hereby transfers, sells and assigns to Assignee effective the 19th day of November, 2003 all of the Assignor's rights, title and interest in and to the Dealer Franchise Agreement.

2. Assignee hereby assumes and covenants to perform all terms, covenants and obligations of Assignor under the Agreement.

(Def. Br. Ex. C.)

Following the assignment, the relationship between Plaintiffs and Defendant Fusion deteriorated. According to Plaintiff Fawaz, although Sunoco informed him that he would receive a phone call from his Area Manager to discuss the assignment, he was never so notified. (Pla. Resp. Br., p.6.) Plaintiffs allege that Defendant Fusion increased the cost of fuel, and shirked its duty to conduct repairs previously assumed by Defendant Sunoco under the 2001 DFA Agreement. (*Id.*) According to Plaintiffs, as the termination deadline for the 2001 DFA Agreement approached, Defendant Fusion's owner, Mr. Harajli, refused to negotiate a new DFA with Plaintiffs and no notice of the termination was served on Plaintiffs until approximately ten (10) months after the 2001 DFA Agreement expired. (*Id.*) Plaintiffs claim that once the 2001 DFA Agreement expired Defendant Fusion increased the price of rent by more than $1,000. (*Id.*) Plaintiffs also claim that as a result of Defendant Harajli's refusal to negotiate a new DFA, he could not finalize an opportunity to sell his station. (*Id.*)

Within one year of the assignment, Plaintiffs claim that Defendant Sunoco went against its own standard policy and allowed Defendant Harajli to open a new Sunoco gas station within less than one-half mile from Plaintiffs' station. *(Id.)* Plaintiff Fawaz alleges that Defendant Fusion

3

charged him more for gasoline than it did its own new station one-half away, so that the new Sunoco could, and did, consistently charge a lower price for gas. Plaintiff Fawaz states that the increased cost of operating his gas station led to such a devastating financial loss that Plaintiff Joy and Middlebelt Sunoco had to shut down.

Plaintiffs thereafter filed a two-count Complaint alleging: 1) a violation of the PMPA against Defendants Fusion and Sunoco; and, a Third Party Beneficiary claim under M.C.L. § 600.1405 against Defendant Sunoco. Defendant Sunoco filed the instant Motion for Summary Judgment. A response and reply have been filed and a hearing held on the matter.

## II.     ANALYSIS

### A.     Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Initially, the movant must meet the burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir 1989). This burden may be met by showing that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Id*. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id*.

### B.     The PMPA

The PMPA is Congress' establishment of the "minimum federal standards governing the termination and nonrenewal of motor fuel marketing franchises and the notice which franchisor must give franchisees before termination or nonrenewal of their franchises." *May-Som Gulf, Inc. v. Chevron U.S.A.*, 869 F.2d 917, 921 (6th Cir. 1989), citing S. Rep. No. 7631, 95th Cong., 2d Sess. 15 (S. Rep.), *reprinted in* 1978 U.S. Code Cong. & Admin. News 873, 877. Congress was primarily concerned with franchisors' use of the threat of termination to force franchisees to comply with corporate marketing policies. *May-Som*, 869 F.2d at 921. Congress "limited 'the common law powers of the oil companies to deal with whom they wished,'" because of the substantial economic power difference between a franchisor and a franchisee. *May-Som*, 869 F.2d at 921 (citing *Russo v. Texaco, Inc.*, 630 F. Supp. 682, 687 (E.D. N.Y. 1989))[2]

Although the PMPA is given a "liberal construction consistent with its overriding purpose to protect franchisees," its reach is not without recognized limitation. *May-Som,* 869 F.2d at 921 (citing *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1221 (7th Cir 1982)). First, as a "diminution of the property rights of franchisors," it should not be applied beyond "its original language and purpose." *May-Som,* 869 F.2d at 921. "Second, ... the PMPA strikes an explicit statutory balance between the interests of franchisees in freedom from arbitrary and discriminatory franchise terminations and the interests of franchisors in freedom to transfer motor fuel marketing assets in response to changing market conditions." *Id*.

The general rule is that in order to sustain a cause of action under the PMPA for wrongful

---

[2]A franchisor is "a refiner or distributor...who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution, of motor fuel." 15 U.S.C. § 2801(3). A franchisee is "a retailer...who is authorized or permitted under a franchise, to use a trademark in connection with the sale of motor fuel.

5

termination or nonrenewal of franchise agreement under the PMPA, a plaintiff must show that "there has been a termination or nonrenewal within the meaning of the PMPA before the protections of the PMPA are triggered." *Clark v. BP Oil Co.,* 137 F.3d 386, 390 (6th Cir. 1998). The PMPA does not prohibit any transfer or assignment of any franchise. 15 U.S.C. § 2806(b). There are two exceptions to this rule:

> To sustain a claim, under the PMPA, that a franchisor assigned and thereby *constructively terminated* a franchise agreement, the franchisee must prove either: (1) that by making the assignment, the franchisor breached one of the three statutory components of the franchise agreement (the contract to use the refiner's trademark, the contract for the supply of motor fuel, or the lease of the premises), and thus, violated the PMPA; or (2) that *the franchisor made the assignment in violation of state law and thus, the PMPA was invoked*.

*May-Som*, 869 F.2d at 922 (citing *Fresher v. Shell Oil Co.*, 846 F.2d 45, 46-47 (9th Cir. 1988) (emphasis added)).

### C. Violation of Statutory Components of the Franchise Agreement

Plaintiffs do not allege that the assignment violated any of the statutory components of the franchise agreement, thereby violating the PMPA. Following the assignment of the 2001 DFA, Plaintiffs continued to use the Sunoco trademark, continued to receive fuel and continued to lease the premises under the 2001 DFA. Plaintiffs have not shown that they were unable to use the refiner's trademark, were not being supplied motor fuel or unable to lease of the premises, in violation of the 2001 DFA.

### D. Validity under State Law

As to whether the assignment is valid under state law, the PMPA leaves the validity of an assignment of a franchise agreement to be interpreted according to applicable state law:

> [N]othing in this subchapter authorizes any transfer or assignment of any franchise or prohibits any transfer or assignment of any franchise as authorized by the

>provisions of such franchise or by any applicable provisions of State law which permits such transfer or assignment without regard to any provision of the franchise.

15 U.S.C. §2608(b)(1). In Michigan, a party is allowed to delegate its contractual duties, except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance. M.C.L. § 550.2210.

Plaintiffs argue that under Michigan law, there is a genuine issue of material fact as to whether Defendant Sunoco is liable under the PMPA, despite the assignment, because of Defendant Fusion's alleged violations of the PMPA. Plaintiffs also argue that the assignment violated Michigan law because it materially changed the duties of the Plaintiffs, increased the burden or risk imposed on Plaintiffs, and impaired Plaintiffs' chance of obtaining return performance. To support their arguments, Plaintiffs cite Michigan's version of the Uniform Commercial Code, U.C.C. 2-201:

>(1) A party may perform that party's duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having that other party's original promisor perform or control the acts required by the contract. *No delegation of performance relieves the party delegating of any duty to perform or any liability for breach.*
>
>(2) Unless otherwise agreed all rights of either seller or buyer can be assigned except where the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on the other party by that other party's contract, or impair materially the other party's chance of obtaining return performance. A right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his or her entire obligation can be assigned despite agreement otherwise.

M.C.L. § 440.2210.

Plaintiffs oppose Defendant Sunoco's motion for summary judgment by arguing that M.C.L. § 440.2210(1) holds Defendant Sunoco liable for any violation of the 2001 DFA or the PMPA committed by Defendant Fusion following the 2003 assignment. As support for this argument,

Plaintiff cites *In Re Klein's Dep't Store, Inc.*, 42 B.R. 393 (Bankr. E.D. Mich 1984).

In *Klein's*, the debtor clothing store assigned its purchase contract with National Service Industries ("NSI") to two different stores, Klein's of Plymouth (KOP) and Klein's of Livonia (KOL), shortly before Klein's filed for bankruptcy. *Klein*, 42 B.R. at 394. All of the stores were owned by the same persons. *Id.* When KOL and KOP made payments to NSI for merchandise received, Klein's trustee argued that these payments were preferential transfers of Klein's property, and therefore voidable under the Bankruptcy Code. *Id.* The trustee did not challenge the validity of the assignment, but merely argued that Klein's was entitled to the money improperly paid to NSI. *Id*. The court ruled that since the assignment was made pursuant to M.C.L § 440.2210(1), Klein's, as the original debtor to NSI, was not relieved of "any duty to perform or any liability for breach." *Id.* at 395 (citing M.C.L. § 440.2210(1)). "Thus, after the goods were delivered and accepted by KOP and KOL, the debtor and KOP and KOL became obligated to pay for them" *Id*.

Initially, the Court notes that M.C.L. § 440.2210(1) has nothing to do with the *validity* of a contract; it merely states that an original party to a contract cannot escape liability for breach of that contract by assigning it to another party. Even assuming that Plaintiffs prove all of their allegations against Defendant Fusion under the 2001 DFA and under the PMPA, this would not *invalidate* the 2003 assignment. Plaintiff's reliance on *In Re Klein* is misplaced because neither the contract nor the assignment in *Klein* were governed by the express language of the 2001 DFA in this case and the intent of the PMPA. Plaintiffs cite no case wherein this provision of the U.C.C. is applied to invalidate an assignment under the PMPA. Even if Plaintiffs can show that Defendant Fusion violated its obligations under the 2001 DFA or the PMPA, M.C.L. § 440.2210(1) would not invalidate the assignment.

-8-

Plaintiffs argue that granting Defendant Sunoco's motion for summary judgment would be improper because Defendant Sunoco may be liable under M.C.L. § 440.2210(2) for Defendant Fusion's breach of the duties it assumed under the 2003 Assignment Agreement. Plaintiffs argue that Defendant Sunoco's motion for summary judgment should not be granted because following the 2003 assignment, their duty was materially changed, their burden and risk imposed materially increased, and their chance of obtaining return performance was materially impaired. Plaintiffs argue that as a result of the assignment, they were forced to undertake repairs, such as replacing a cash register, and pay an increased price of fuel which led to loss of profits. Plaintiffs argue that these factors increased Plaintiffs' burden and materially changed Plaintiffs' duties. Plaintiffs allege that Defendant Fusion's failure "to attempt renewal of the Franchise Agreement in good faith," and Defendant Sunoco's permission to Defendant Fusion to open a second Sunoco station close to Plaintiffs' station materially impaired Plaintiffs' chance of obtaining a return performance. (Pl. Resp. Br. at 14-15).

The Court finds that the facts in *Clark, supra*, are similar to the instant case and are controlling. In *Clark,* defendant Chevron assigned the plaintiff's franchise agreement to defendant Cumberland. *Clark*, 137 F.3d at 392. Plaintiff argued in *Clark* that an increase in price of fuel constituted a material change in his duties, and that the increased rent and fuel prices "and other costs imposed on him" upon renewing his franchise with an assignee invalidated the assignment under Tennessee's version of U.C.C. 2-210(2).[3] *Id.* at 393. The court dismissed this argument finding that the increase in fuel cost was minuscule and emphasized that plaintiff agreed to an open

---

[3]Tennessee has adopted, verbatim, U.C.C. 2-210. The language is almost identical to M.C.L. § 440.2210.

-9-

price term. *Id*. The court disregarded plaintiff's claim of rent and pricing terms because these costs were not increased during the life of the original franchise agreement. The increased rent and pricing terms could have been imposed on plaintiff even if he had negotiated a renewal with defendant Chevron, the assignor. *Id.*

Plaintiffs' arguments that Defendant Fusion increased the rent in March 2004 (approximately one month after the 2001 DFA expired on February 4, 2004) and increased the price of gasoline in December of 2003, are not sufficient to create a genuine issue of material fact based on *Clark*. The rent was increased after the 2001 DFA expired on February 4, 2004. As to the increased fuel prices, the Court notes that the 2001 DFA provided that Defendant Sunoco reserved the right at any time to change its prices. (2001 DFA, ¶ 2.02, Prices) Regarding Plaintiffs' claim that Defendant Sunoco allowed Defendant Fusion's owner to open a Sunoco station one-half mile from Plaintiffs' station, it is noted that Plaintiffs do not point to any provision in the 2001 DFA prohibiting Defendant Sunoco from opening another station one-half mile from Plaintiffs' station. Additionally, Plaintiffs do not specifically state when the new Sunoco station was open–whether it was after the expiration of the 2001 DFA in February 2004. Plaintiff Fawaz's affidavit merely indicates in his affidavit dated December 14, 2004 that he "recently" discovered that a new Sunoco station opened one-half mile from his station. The affidavit was prepared nine months since the expiration of the 2001 DFA in February 2004. (12/14/05 Fawaz Aff., ¶ 5) Plaintiffs have failed to create a genuine issue of material fact that the increase in rent after the 2001 DFA expired, the increase in fuel prices in December 2003 and the opening of a new Sunoco station down the road from Plaintiffs' station materially changed their duties.

    **E.**    **Duty of Good Faith under the PMPA**

Plaintiffs further claim that Defendant Fusion's failure to renew the 2001 DFA in good faith as required by the PMPA, Defendant Sunoco's failure to hold Defendant Fusion to that good faith requirement, and Defendant Sunoco's actions undermining the good faith requirement by allowing Fusion to open a competing Sunoco station within one-half mile of Plaintiff's gas station create a genuine issue of material fact as to whether to hold Defendant Sunoco liable under the PMPA. (Pl. Resp. Br. at 15). Plaintiffs also allege that Defendant Sunoco may be held liable under M.C.L. § 440.2210(2) for Defendant Fusion's alleged breach of the notice requirement of the PMPA.

As to Defendant Sunoco's alleged failure to renew the franchise agreement, this Court finds that *Clark* controls. Plaintiffs argue that *Clark* does not control because, unlike the plaintiff in *Clark*, Plaintiff Joy and Middlebelt is not arguing that the assignment was a constructive termination. Rather, Plaintiff claims that under Michigan law, M.C.L. § 440.2210, an assignor remains liable under the original contract if the assignee fails to perform or breaches the contract.

The plaintiff in *Clark* made the same argument as Plaintiffs in this case that the defendant assignors should be held liable for "violat[ing] implied contractual duties, such as the duty of good faith and fiduciary duties created by [state] law..." *Clark,* 137 F.3d at 396. The Sixth Circuit affirmed the trial court's finding that any duties imposed on the termination or nonrenewal of a franchise agreement by state law were preempted by Section 2806(a) of the PMPA:

> To the extent that any provision of this subchapter applies to the termination (or furnishing of notice with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notice with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce or continue in effect any provision of law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notice thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable regulation of this subchapter.

*Id.*

Plaintiffs argument that under M.C.L. § 440.2210(1) and (2) Defendant Sunoco is still liable, "amount to an attempt to impose standards concerning termination and nonrenewal, and notice thereof, that are more stringent than those imposed by the PMPA," and are preempted by the PMPA. *Clark*, 137 F.3d at 396 (citing *Consumer Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907, 914-16 (6th Cir. 1986) (State law claims attacking defendant's actions surrounding termination and nonrenewal were preempted by Section 2806(a) of PMPA)).

The renewal provision under § 2806(a) of the PMPA is addressed to a "franchisor." Defendant Sunoco ceased to be (and Defendant Fusion became) the "franchisor" under the 2003 Assignment Agreement. Plaintiffs have not shown that the assignment was not valid under state law. Defendant Fusion has now become the "franchisor" under the PMPA. Under the PMPA, the assignee, here, Defendant Fusion, has now retained the original franchisor's right to decide to terminate or not renew the franchise. *Clark,* 137 F.3d at 394. The claim that Defendant Fusion improperly failed to renew the franchise agreement with Plaintiffs cannot be asserted against Defendant Sunoco because Defendant Sunoco is no longer the franchisor. Any claim of improper termination must be made against the current franchisor.

### III.   CONCLUSION

For the reasons stated above, there is no genuine issue of material fact which precludes summary judgment in favor of Defendant Sunoco.

Accordingly,

IT IS ORDERED that Defendant Sunoco's Motion for Summary Judgment **(Docket No. 53, filed July 19, 2005)** is GRANTED.

IT IS FURTHER ORDERED that Defendant Sunoco only is DISMISSED with prejudice from this case.  Defendant Fusion Oil remains.

IT IS FURTHER ORDERED that a Status Conference be held in this matter with the remaining parties on **Tuesday, May 30, 2006, 4:00 p.m.**

s/   DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge

DATED: March 31, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2006, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager

-13-